Cite as 2023 Ark. 191

# SUPREME COURT OF ARKANSAS

**No.** CR–23–223

|  |  |
|---|---|
| | **Opinion Delivered**: December 14, 2023 |
| WILLIAM TOD RICKERT  APPELLANT | |
| V. | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CR-20-505] |
| STATE OF ARKANSAS  APPELLEE | HONORABLE SUSAN WEAVER, JUDGE |
| | AFFIRMED. |

**COURTNEY RAE HUDSON, Associate Justice**

Appellant William Tod Rickert appeals his convictions in the Faulkner County Circuit Court for three counts of rape. He was sentenced as a habitual offender to three life sentences, to be served concurrently. For reversal, Rickert argues that (1) the circuit court erred by not directing verdicts on each of the three counts of rape; (2) the circuit court abused its discretion in admitting evidence of prior bad acts under the pedophile exception; and (3) the circuit court abused its discretion by admitting the certified copy of his prior Indiana convictions. We affirm.

Following a report to the Child Abuse Hotline, the State filed a criminal information on May 13, 2020, charging Rickert with the rape of Minor Child ("MC") when MC was less than fourteen years of age. The State filed an amended criminal information on June 21 and August 31, 2022, adding two additional counts of rape and charging Rickert as a habitual

offender. All three rape counts were alleged to have occurred between January 1, 2016, and December 31, 2018.

Before trial, the State filed notice of its intent to admit evidence of Rickert's prior sexual conduct with two other witnesses when they were minors pursuant to the pedophile exception to Ark. R. Evid. 404(b). Rickert filed motions in limine objecting to the introduction of this evidence, claiming that it was not independently relevant and that any probative value was substantially outweighed by the danger of unfair prejudice. At a pretrial hearing on the issue, MC, and the two potential Rule 404(b) witnesses, Sarah Rodriguez and Kelly Stiff, each testified and described their history of abuse by Rickert. The circuit court concluded that the Rule 404(b) evidence was admissible under the pedophile exception and that it was not more prejudicial than probative.

The jury trial was held on September 6–7, 2022. MC, who was sixteen years old at the time of trial, testified that when he was ten or eleven years old, he lived in Mayflower with his grandmother for a one-year period. Rickert lived next door and babysat MC almost every day while his grandmother was at work. MC stated that he would typically play video games on Rickert's virtual-reality headset or watch movies, although he sometimes helped Rickert with his flooring business. MC testified that one day when he took off his virtual-reality headset, Rickert was standing behind him naked. Rickert told MC to get on the couch, and he then put his penis in MC's mouth. MC left Rickert's house afterward, and Rickert told him, "What happens in this house, stays in this house." MC testified that Rickert forced him to engage in this sexual conduct on approximately eight separate occasions but described two incidents that were different than the other encounters. During

one of these incidents, Rickert told him to lie down on the couch, and Rickert lay on top of MC and placed his penis in MC's mouth while also performing oral sex on MC. On another occasion, Rickert told MC to lie on his stomach and pull down his pants. Rickert then put his penis in MC's anus. MC testified that it hurt and that Rickert quit when he said, "Ow." According to MC, Rickert would tell him every single time that "what happens in this house, stays in this house," and Rickert would point to a sign hanging in his house with this quote. After one of the incidents, MC told his older sister about it, but she thought it was a joke. MC testified that he continued going over to Rickert's home because he was MC's babysitter, and he was told that he had to go. It was not until two years later, after MC moved into his mother's home in Tulsa, that MC disclosed the abuse. His mother then notified the authorities. MC admitted that during his interview, he described only one incident of oral sex because he was embarrassed.

After Rickert's renewed objection to her testimony was denied, Sarah Rodriguez testified and described Rickert's prior sexual conduct with her. She stated that she was currently forty years old and that Rickert was her stepfather when she was younger and lived in Magnolia, Arkansas. Rodriguez testified that she was three years old when the first incident occurred. She got into trouble, and Rickert told her to take off her clothes and bend over a chair to be spanked. He did not hit her that day; however, one week later, she again got into trouble when she was home alone with Rickert. He told her to bend over the chair naked, and he then walked in front of her and put his penis in her mouth. Rickert told her that it was a secret and not to tell her mother. Rodriguez testified that he forced her to perform oral sex on many occasions. She further testified to one incident when they

3

were alone in the car, and Rickert performed oral sex on her. He threatened to hurt her or kill her and her grandmother if she told anyone about the abuse. According to Rodriguez, the last time she had sexual contact with Rickert was when she was seven years old. He isolated her in the back yard, pulled up her dress, began to fondle her, and then put the head of his penis into her vagina. She began bleeding that night, and her grandmother took her to the hospital. She then moved to Washington with her grandmother. Although her grandmother had reported the sexual conduct to authorities when Rodriguez was twelve years old, Rodriguez did not know whether formal charges were ever filed against Rickert.

Kelly Stiff, who was twenty-four years old at the time of trial, testified that Rickert was her mother's boyfriend when she was three years old and lived in Indiana. She specifically recalled an occasion when Rickert came into her bedroom, laid her on the floor, made her pull up her nightgown, and touched her vagina while she touched his penis. Stiff stated that no one else was around when that happened and that she told her mother about it the next morning. Stiff explained that her mother immediately reported the incident. A certified copy of Rickert's August 2003 convictions in Indiana for child molesting and criminal confinement was admitted into evidence without objection. Also included in the State's exhibit containing the prior convictions were the criminal information charging Rickert with the crimes against Stiff; an affidavit of probable cause for Rickert's arrest, which contained additional details about these charges as well as the affiant's statement that Rickert had been charged with sex offenses involving children in Arkansas in the 1980s; and a probation-revocation order related to the Indiana charges.

After the State rested, Rickert moved for directed verdict, arguing that there was insufficient evidence to support the rape charges based on inconsistencies in MC's testimony and the lack of physical evidence. The circuit court denied the motions. The jury found Rickert guilty on all three rape counts. Because Rickert had two prior violent felony convictions, he was sentenced by the circuit court as a habitual offender to life imprisonment on each count, with the sentences to be served concurrently. The sentencing order was entered on September 8, 2022, and Rickert filed a timely notice of appeal.

Rickert first argues that the circuit court erred by not directing verdicts on each of the three counts of rape. He contends that the State failed to present sufficient proof to support his convictions because MC could not testify as to exactly when the rapes occurred, he did not report the rapes until two years later, and he initially disclosed only one incident but then changed his story prior to trial. Rickert also points to MC's testimony that he continued to return to Rickert's home even after the incidents and that he initially downplayed his disclosure to his mother by making it sound like a joke. Finally, Rickert argues that there was no physical or forensic evidence of any kind.

We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *McCray v. State*, 2020 Ark. 172, 598 S.W.3d 509. In reviewing a sufficiency challenge, we assess the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id*. We will affirm a judgment of conviction if substantial evidence exists to support it. *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491. Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to

5

speculation or conjecture. *Id.* The credibility of witnesses is an issue for the jury, not the court; the trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

Pursuant to Arkansas Code Annotated section 5-14-103(a)(3)(A) (Supp. 2017), a person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person who is incapable of consent because he or she is less than fourteen years of age. "Deviate sexual activity" includes "any act of sexual gratification involving [t]he penetration, however slight, of the anus or mouth of a person by the penis of another person[.]" Ark. Code Ann. § 5-14-101(1)(A) (Supp. 2017). We have held that a rape victim's uncorroborated testimony describing penetration may constitute substantial evidence to sustain a rape conviction, even when the victim is a child. *E.g.*, *McCauley v. State*, 2023 Ark. 68, 663 S.W.3d 383. Scientific or medical evidence is not required. *Id.*

MC stated that Rickert had raped him approximately eight times when he was ten or eleven years old. MC also testified to three specific incidents—two involved Rickert inserting his penis into MC's mouth and one involved Rickert inserting his penis into MC's anus. This testimony alone is substantial evidence to support the three rape convictions, and no corroborating evidence is necessary. *McCauley*, *supra*. While Rickert challenges MC's credibility, inconsistencies in the testimony of a rape victim are for the jury to resolve. *Dominguez v. State*, 2020 Ark. 286. We therefore affirm Rickert's convictions.

In his next point on appeal, Rickert argues that the circuit court abused its discretion by admitting the testimony of Rodriguez and Stiff under the pedophile exception to Ark. R. Evid. 404(b). Specifically, he claims that the prior sexual conduct alleged by Rodriguez

and Stiff was both dissimilar in character and temporally removed from the charges involving MC. Rickert further contends that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice and that it should have been excluded under Ark. R. Evid. 403.

Arkansas Rule of Evidence 404(b) provides that

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We have stated that the first sentence in Rule 404(b) provides the general rule excluding evidence of a defendant's prior bad acts, while the second sentence provides an exemplary, but not exhaustive, list of exceptions to that rule. *Lard v. State*, 2014 Ark. 1, 431 S.W.3d 249. Evidence is not admissible under Rule 404(b) simply to show a prior bad act; rather, the test for admissibility under this rule is whether the evidence is independently relevant, which means that it must tend to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Vance v. State*, 2011 Ark. 243, 383 S.W.3d 325. The admission or rejection of evidence under Rule 404(b) is left to the sound discretion of the circuit court, and we will not reverse the court's ruling absent a manifest abuse of discretion. *Lard*, *supra*. The abuse-of-discretion standard is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Lane v. State*, 2019 Ark. 5, 564 S.W.3d 524.

We have also recognized a separate "pedophile exception" to the general rule that evidence of a defendant's prior bad acts cannot be used to prove that the defendant

7

committed the charged crime. *Hortenberry v. State*, 2017 Ark. 261, 526 S.W.3d 840. As we

stated in *Holland v. State*, 2015 Ark. 341, at 7–8, 471 S.W.3d 179, 184–85:

> When the charge concerns the sexual abuse of a child, evidence of other crimes, wrongs, or acts, such as sexual abuse of that child or other children, is admissible under the "pedophile exception" to show motive, intent, or plan pursuant to Ark. R. Evid. 404(b). *Fields v. State*, 2012 Ark. 353, 2012 WL 4471112. We have approved allowing evidence of the defendant's similar acts with the same or other children when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship. *Kelley v. State*, 2009 Ark. 389, 327 S.W.3d 373. The rationale for this exception is that such evidence helps to prove the depraved sexual instinct of the accused. *Jeffries v. State*, 2014 Ark. 239, 434 S.W.3d 889. Further, such proof is admissible to show the familiarity of the parties, disposition, and antecedent conduct toward one another and to corroborate the testimony of the victim. *Fields*, *supra* (citing *Free v. State*, 293 Ark. 65, 732 S.W.2d 452 (1987)). For the pedophile exception to apply, we require that there be a sufficient degree of similarity between the evidence to be introduced and the sexual conduct of the defendant. *Eubanks v. State*, 2009 Ark. 170, 303 S.W.3d 450. We also require that there be an "intimate relationship" between the perpetrator and the victim. *Chunestudy v. State*, 2012 Ark. 222, 408 S.W.3d 55.

> Evidence admitted pursuant to Rule 404(b) must not be too separated in time, making the evidence unduly remote. *Brown v. State*, 2012 Ark. 399, 424 S.W.3d 288. The circuit court is given sound discretion over the matter of remoteness and will be overturned only when it is clear that the questioned evidence has no connection with any issue in the present case. *Nelson v. State*, 365 Ark. 314, 229 S.W.3d 35 (2006).

> Evidence to be admitted under the pedophile exception is also subject to exclusion under Rule 403, which provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See Hernandez v. State*, 331 Ark. 301, 962 S.W.2d 756 (1998). We review a circuit court's decision to admit evidence over a Rule 403 objection under an abuse-of-discretion standard as well. *Flanery v. State*, 362 Ark. 311, 208 S.W.3d 187 (2005).

We first address the admissibility of Rodriguez's testimony. Rodriguez stated that

Rickert was her stepfather from 1985 to 1992 when she was between three and seven years

old. She testified that Rickert's sexual conduct started with having her bend over a chair

naked and then progressed to forcing her to both perform and receive oral sex. His behavior

8

eventually culminated in the vaginal rape of Rodriguez. All of these incidents occurred when Rickert was able to isolate her from others. He also threatened to hurt Rodriguez or her family to keep her from disclosing his sexual conduct.

After thoroughly reviewing the testimony presented at the pretrial hearing and the parties' arguments, the circuit court found that the sexual conduct described by Rodriguez was sufficiently similar to that alleged by MC. The court also found that an intimate relationship existed between Rickert and both of these victims. Although the circuit court expressed concern over the remoteness in time of the incidents testified to by Rodriguez, the court concluded that this evidence was nonetheless admissible under the pedophile exception to Ark. R. Evid. 404 because it tended to show Rickert's predatory sexual instinct. The court further found that the probative value of the testimony outweighed its prejudicial effect pursuant to Ark. R. Evid. 403.

We hold that the circuit court did not abuse its discretion in allowing Rodriguez's testimony. The prior acts described by Rodriguez are similar to those forced on MC by Rickert. Both victims were around ten years of age or younger, and they were both under Rickert's supervision and authority at the time. Rickert had an intimate relationship with each child—he was Rodriguez's stepfather and MC's babysitter. The progression of sexual acts was also similar, from performing oral sex to both performing and receiving oral sex, and then to either vaginal or anal penetration. In addition, although he did not physically threaten MC as he did with Rodriguez, Rickert warned both victims not to tell anyone else about the acts.

9

Despite Rickert's argument to the contrary, the fact that Rodriguez is a female and MC is a male does not render Rodriguez's testimony inadmissible. *See, e.g.*, *Mabry v. State*, 2020 Ark. 72, 594 S.W.3d 39 (holding that a gender difference between the witnesses and the victim does not prevent application of the pedophile exception when the acts are similar, even if not identical); *Swift v. State*, 363 Ark. 496, 215 S.W.3d 619 (2005) (same). Nor do we require that the accused have been formally charged with the prior act or that the conduct be substantiated. *Allen v. State*, 374 Ark. 309, 287 S.W.3d 579 (2008). Further, while Rickert's sexual acts with Rodriguez occurred more than thirty years prior to her testimony, we have previously upheld the admission of evidence under the pedophile exception even when a significant time gap exists. *See, e.g.*, *Brown v. State*, 2012 Ark. 399, 424 S.W.3d 288 (affirming admission of victims' testimony about prior sexual conduct that occurred twenty years prior to trial); *Rohrbach v. State*, 374 Ark. 271, 287 S.W.3d 590 (2008) (holding that acts occurring twenty-four years earlier were admissible); *Lamb v. State*, 372 Ark. 277, 275 S.W.3d 144 (2008) (stating that prior acts committed twenty years ago not too remote); *Baumann v. State*, 2018 Ark. App. 564, 566 S.W.3d 494 (affirming admission of testimony about abuse committed thirty years prior); *Morrison v. State*, 2011 Ark. App. 290 (holding that circuit court did not abuse its discretion in admitting prior-bad-act evidence that was more than forty years prior). Accordingly, the circuit court did not err in concluding that Rodriguez's testimony was admissible under the pedophile exception to Rule 404(b).

We also hold that the circuit court did not abuse its discretion in determining that this evidence should not be excluded under Rule 403. Although evidence offered by the

State is often likely to be prejudicial to the accused, the evidence should not be excluded unless the accused can show that it lacks probative value in view of the risk of unfair prejudice. *Allen*, *supra*. In cases involving the pedophile exception, we have considered the similarities between the alleged prior conduct and the charged conduct to determine whether the evidence is probative on the issue of the accused's motive, intent, preparation, plan, and scheme, or on the issue of the accused's deviate sexual impulses. *Id.* Here, the conduct alleged by Rodriguez was quite similar to the charged conduct, both in terms of the acts themselves and the manner in which Rickert isolated and threatened each victim. Thus, it was relevant to show his preparation, plan, or scheme. As the circuit court concluded, this evidence was also probative of Rickert's predatory sexual instinct. We therefore affirm the admission of Rodriguez's testimony.

We next address Rickert's argument with regard to Stiff's testimony. Rickert was Stiff's mother's boyfriend in 2001, when Stiff was three years old. Stiff testified that Rickert came into her room one night when she was alone, pulled up her nightgown, and touched her vagina. Rickert also made her touch his penis. She told her mother the next morning, and Rickert was later convicted of child molesting and criminal confinement.

As with Rodriguez, the circuit court found that Rickert's prior conduct with Stiff was sufficiently similar to the charged conduct for the pedophile exception to apply. The court noted that Stiff was in the same age range as MC, that Rickert had an intimate relationship with Stiff as her mother's boyfriend, and that Stiff was in his care when the sexual contact occurred. Despite Rickert's argument that the conduct with Stiff was too remote in time, the court concluded that her testimony was relevant and admissible to show

11

Rickert's depraved sexual instinct. While Stiff did not have total recall of every detail of the prior acts, the circuit court noted that she was able to testify to several details, and her testimony was corroborated by Rickert's convictions.

Rickert's arguments that Stiff's testimony was inadmissible because it was too remote in time and because she was a different gender than MC are without merit for the same reasons discussed above with regard to Rodriguez. *E.g.*, *Mabry*, *supra*; *Brown*, *supra*. Nor did the circuit court abuse its discretion by determining that Stiff's testimony included sufficient detail to establish that Rickert's prior acts and his conduct with MC were similar and that this evidence was probative of Rickert's proclivity toward sexual acts with prepubescent children in his care. The documents related to Rickert's convictions that were admitted into evidence further supported the circuit court's conclusion. Given the relevance of this evidence, the circuit court also did not err by finding that it should not be excluded as more prejudicial than probative under Rule 403. Thus, we affirm the circuit court's admission of Stiff's testimony.

In a related argument, Rickert contends in his final point on appeal that the circuit court also abused its discretion in admitting the certified copy of Rickert's Indiana convictions for the molestation and confinement of Stiff. He claims that this evidence should not have been allowed under the pedophile exception to Rule 404(b) because the convictions involved dissimilar criminal activity. Rickert argues that even if the convictions were relevant, they were overly prejudicial pursuant to Rule 403.

As we discussed with regard to Stiff's testimony, the circuit court did not abuse its discretion by finding that the prior convictions were admissible under the pedophile

12

exception. Although Rickert contends that the offenses of child molesting and criminal confinement are "apples and oranges" compared to the rape charges in this case, we have previously rejected the argument that the prior acts must be identical to the charged conduct. *E.g.*, *Hernandez v. State*, 331 Ark. 301, 962 S.W.2d 756 (1998) (holding that prior allegation of touching private part sufficiently similar to victim's allegations of digital penetration and intercourse). Further, as the State asserts, the affidavit of probable cause admitted along with the prior convictions indicated that Rickert not only fondled Stiff but also placed his fingers in her vagina, which qualifies as deviate sexual activity in Arkansas—the same conduct with which Rickert was charged in this case. *See* Ark. Code Ann. § 5-14-101(1) (Supp. 2021); Ark. Code Ann. § 5-14-103(a)(3) (Supp. 2021). To the extent Rickert complains that Stiff's testimony was inconsistent with the details provided in the court records, he was able to cross-examine her about these discrepancies, and it was for the jury to resolve issues of credibility and conflicts in the evidence. *See, e.g.*, *Holland*, *supra* (stating that alleged inconsistencies in the testimony of Rule 404(b) witness's testimony went to the weight of the testimony rather than its admissibility).

Rickert also argues that the prior convictions and related records admitted, along with Stiff's testimony, were more prejudicial than probative because they contained additional information such as the fact that he had pled guilty to the offenses, that Stiff had claimed that he held her down while he sexually assaulted her, that a physical examination of Stiff had revealed evidence of an assault, that he had previously been charged with offenses involving children in Arkansas in the 1980s, and that his probation had subsequently been revoked. He contends that the admission of the prior convictions opened "a Pandora's box

13

of prejudicial information" and that these records contained double and triple hearsay. Rickert's argument regarding the contents of these records is not preserved for our review. He did not move to exclude or redact any of this information in his pretrial motions in limine. Furthermore, he stated that he had no objection when the State's exhibit was introduced at trial. Because this argument is being raised for the first time on appeal, we decline to address it. *See, e.g., Allen, supra* (stating that an appellant is limited by the scope and nature of the arguments and objections presented at trial and may not change the grounds for his objection on appeal). The circuit court did not abuse its discretion in concluding that these records were admissible under Rules 403 and 404(b), and we affirm the circuit court's ruling.

*Rule 4-3(a) Review*

Because Rickert received life sentences, the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Rickert in compliance with Arkansas Supreme Court Rule 4–3(a), and no other prejudicial error has been found.

Affirmed.

*Sharon Kiel*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Walker K. Hawkins*, Ass't Att'y Gen., for appellee.